*Gary Antoine v. State of Maryland*, et al., No. 2880, September Term, 2018.  Opinion by
Fader, C.J.

**CRIMINAL LAW — APPEALS — VICTIMS' RIGHTS**

A crime victim may appeal to the Court of Special Appeals from a final order that denies
or fails to consider a right secured to the victim by §§ 4-202, 11-102, 11-103(e)(4),
11-104, 11-302, 11-402, 11-403, or 11-603 of the Criminal Procedure Article;
§ 3-8A-06, § 3-8A-13, or § 3-8A-19 of the Courts and Judicial Proceedings Article; or
§ 6-112 of the Correctional Services Article.

**CRIMINAL PROCEDURE — SENTENCING — VICTIM IMPACT EVIDENCE**

Before a trial court commits itself to a particular disposition of a criminal case by
approving finally a binding plea agreement under Maryland Rule 4-243, the court must
provide any identifiable victim whose desire to present victim impact evidence has been
made known to the court with a reasonable opportunity to present victim impact
evidence in accordance with §§ 11-402 and 11-403 of the Criminal Procedure Article.

**CRIMINAL PROCEDURE — VICTIMS' RIGHTS — REMEDIES**

A court that finds a crime victim's rights have been violated may grant relief necessary
to rectify the violation, provided that the victim requests relief within 30 days of the
violation and that the remedy does not violate a defendant's constitutional right to be
free from double jeopardy.

**CONSTITUTIONAL LAW — FIFTH AMENDMENT — VICTIMS' RIGHTS**

When a court errs by not affording a crime victim the ability to present victim impact
evidence before giving final approval to a binding plea agreement, the defendants' Fifth
Amendment right to be free from double jeopardy is not violated if the trial court or an
appellate court vacates the trial court's approval of the binding plea agreement to permit
the court to receive appropriate victim impact evidence.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2880

September Term, 2018

————————————————————————

GARY ANTOINE

v.

STATE OF MARYLAND, ET AL.

————————————————————————

Fader, C.J.,
Beachley,
Kenney, James A., III
    (Senior Judge, Specially Assigned),

JJ.

————————————————————————

Opinion by Fader, C.J.

————————————————————————

Filed: April 14, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

Over the past several decades, the General Assembly has tried repeatedly to provide meaningful rights to crime victims that can be enforced without violating the constitutional rights of criminal defendants. Over that same period, the Court of Appeals similarly "has continuously balanced the legislature's public policy mandate of affording victims broad rights against the need for appropriate limitations." *Lopez v. State*, 458 Md. 164, 179 (2018). Here, we are called upon to determine whether the rights of a crime victim were violated in the course of criminal proceedings that resulted in a guilty plea agreement and, if so, whether a remedy exists that can be enforced without violating the constitutional rights of the criminal defendant.

Gary Antoine, the appellant, was assaulted by Dorian Bostic, the appellee. During a hearing that a prosecutor advised Mr. Antoine not to attend, the Circuit Court for Baltimore City became involved in negotiating a plea agreement with Mr. Bostic and, without first hearing from Mr. Antoine, bound itself to a disposition of probation before judgment. When Mr. Antoine subsequently asked the court to reconsider its decision and hear from him before reaching a final determination regarding Mr. Bostic's sentence, the court responded that it lacked authority to reopen Mr. Bostic's disposition.

Mr. Antoine now argues that the circuit court's actions denied him his constitutional and statutory right to present victim impact evidence before sentencing. We agree. When a victim has invoked sufficiently his or her right to present victim impact evidence before sentencing, a court errs as a matter of law if it approves a plea agreement that binds the court to a particular sentence without first giving the victim a reasonable opportunity to present appropriate victim impact evidence. We also hold that when such an error occurs,

§ 11-103(e)(2) of the Criminal Procedure Article (Repl. 2018; Supp. 2019) authorizes a remedy that is both effective and respectful of the constitutional rights of defendants. That remedy is to vacate the sentence and the trial court's final approval of the plea agreement, and require the court to receive and consider victim impact evidence before deciding whether to give final approval of the plea agreement. We will apply that remedy here.

## BACKGROUND

### *Maryland's Statutes Protecting the Rights of Crime Victims*

Protections for the rights of crime victims in Maryland are contained in both Article 47 of the Declaration of Rights, and in Title 11 of the Criminal Procedure Article.[1] Of particular relevance here, § 11-402 establishes a crime victim's right to present, and the sentencing court's obligation to consider, a victim impact statement; and § 11-403 establishes the victim's right to address the court *before* the court imposes a sentence or other disposition.

As set forth in § 11-402(e), a "victim impact statement" must identify the victim; itemize the victim's economic loss; identify and describe the seriousness of any physical injuries; "describe any change in the victim's personal welfare or familial relationships"; "identify any request for psychological services"; identify any request to prohibit contact with the victim; and "contain any other information related to the impact on the victim or the victim's family that the court requires." Section 11-402(b) provides that "[i]f the court does not order a presentence investigation or predisposition investigation, the prosecuting

---

[1] Unless otherwise indicated, all statutory citations in this opinion are to the Criminal Procedure Article of the Annotated Code of Maryland (Repl. 2018; Supp. 2019).

attorney or the victim may prepare a victim impact statement to be submitted to the court and the defendant . . . in accordance with the Maryland Rules." Section 11-402(d) requires the court to "consider the victim impact statement in determining the appropriate sentence or disposition and in entering a judgment of restitution for the victim . . . ."

Section 11-403(b) provides that "the court, if practicable, shall allow the victim or the victim's representative to address the court under oath before the imposition of sentence or other disposition." A victim who chooses to address the court is subject to cross-examination "limited to the factual statements made [by the victim] to the court," *id.* § 11-403(c), but a victim also has a right not to address the court, *id.* § 11-403(d).[2]

The rights of victims are further specified in § 11-103(b) and (e). Section 11-103(b) provides appellate rights to crime victims. That section provides, in pertinent part:

> Although not a party to a criminal or juvenile proceeding, a victim of a crime for which the defendant . . . is charged may file an . . . appeal to the Court of Special Appeals from a final order that denies or fails to consider a right secured to the victim by subsection (e)(4) of this section, . . . § 11-402, [or] § 11-403, . . . of this title . . . .[3]

---

[2] Victims also have a right to appear at hearings on motions to revise, modify, or reduce a sentence or other disposition. Crim. Proc. § 11-403(a), (b). If a victim fails to appear at any such hearing, the proceeding may continue only if the prosecuting attorney states on the record that (i) "the victim or victim's representative was contacted by the prosecuting attorney and waived the right to attend the hearing"; (ii) the victim or victim's representative could not be located despite efforts made to do so, or (iii) "the victim or victim's representative ha[d] not filed a notification request form." *Id.* § 11-403(e)(1). "If the court is not satisfied by the [prosecutor's] statement . . . the court may postpone the hearing." *Id.* § 11-403(e)(2).

[3] Both the LexisNexis and West versions of the Maryland Code contain misleading captions both for § 11-103, in general, and § 11-103(b), in particular. Both captions in both versions refer only to victims' right to seek leave to appeal, presumably because until recently, that was all the statute provided. In 2013, however, the General Assembly

3

Section 11-103(e) makes courts responsible for ensuring that victims' rights are honored, and authorizes them to fashion appropriate remedies if not:

> (1) In any court proceeding involving a crime against a victim, the court shall ensure that the victim is in fact afforded the rights provided to victims by law.

> (2) If a court finds that a victim's right was not considered or was denied, the court may grant the victim relief provided the remedy does not violate the constitutional right of a defendant . . . to be free from double jeopardy.

> (3) A court may not provide a remedy that modifies a sentence of incarceration of a defendant . . . unless the victim requests relief from a violation of the victim's right within 30 days of the alleged violation.

> (4)(i) A victim who alleges that the victim's right to restitution under § 11-603 of this title was not considered or was improperly denied may file a motion requesting relief within 30 days of the denial or alleged failure to consider.

> (ii) If the court finds that the victim's right to restitution under § 11-603 of this title was not considered or was improperly denied, the court may enter a judgment of restitution.

Section 11-103(e)(1) thus requires a court to ensure that a victim's statutory rights are protected; § 11-103(e)(2) authorizes a court to provide a remedy if it finds that those rights have not been protected; and § 11-103(e)(3) expressly contemplates that such a remedy might include the modification or alteration of a sentence.

With this statutory background in mind, we turn to the case before us.

---

expanded the statute to permit direct appeals from final judgments. 2013 Md. Laws, ch. 363. By delivering copies of this opinion to LexisNexis and West, we hereby suggest that they change the captions of these sections to reflect that change. *See Carter v. State*, 236 Md. App. 456, 481-82 & n.15 (2018).

*Factual Background*

The State presented the following recitation to provide the factual basis in support

of Mr. Bostic's guilty plea:

> [V]ictim Antoine[,] Gary, is a teacher at Patterson High School.
> [Mr. Antoine] was leaving the school building when [Mr. Bostic] pepper
> sprayed [him]. [Mr. Bostic] . . . then pulled out an aluminum bat, was
> swinging at [Mr. Antoine]. [Mr. Bostic] hit [Mr. Antoine] with the bat on
> [Mr. Antoine]'s right forearm and left wrist. [Mr. Bostic] then ran to his car
> and shouted, "I'm going to run you over" to [Mr. Antoine]. [Mr. Bostic]
> sped out of the parking lot.
>
> [Mr. Antoine] was transported to Hopkins Bayview for his injuries.
> [Mr. Antoine]'s right ulna was found to be broken during the assault.
> [Mr. Antoine] received medication for pain management and was referred to
> an orthopedic surgeon for surgery needed . . . to correct his injury.
>
> [Mr. Antoine] was able to identify [Mr. Bostic] because they taught together
> at Patterson High School in 2015. Incident was also captured on school
> security video. Other witnesses also saw the assault and were able to identify
> [Mr. Bostic], during which . . . [Mr. Antoine]'s laptop, remote control drone,
> smart watch, and camera were damaged to the amount of approximately
> $3,000. If called to testify, all witnesses would identify [Mr. Bostic]. All of
> this did occur in Baltimore City, Maryland.

Mr. Bostic accepted the State's factual recitation, with the exception of "the

swinging of the bat and the attempt to run over in the vehicle."

*The October 15, 2018 Guilty Plea and Sentencing Hearing*

On October 15, 2018, Mr. Bostic appeared in the Circuit Court for Baltimore City

for his scheduled trial date. Because the prosecutor assigned to the case was on paternity

leave, a stand-in prosecutor represented the State. Mr. Antoine was not present, but was

instead "on call," because the assigned prosecutor—anticipating that the trial would be

postponed in his absence—had told Mr. Antoine that "nothing substantive would occur"

and "not to appear" in court.

5

When Mr. Bostic's case was called, the circuit court asked whether there was "any possibility of a plea." The stand-in prosecutor informed the court that the State had offered "18 in 18"—i.e., a suspended sentence of 18 months followed by 18 months of supervised probation—and that the State was willing to reduce the period of supervised probation to 12 months. After further discussions away from the bench, the parties returned for another conference, at which time defense counsel conveyed that the parties were "very close," but needed the court's "wisdom to assist us with this case if you can offer it." The court initially responded that it would "not go[] under [the State's] offer," and, when informed that there was "potentially significant restitution," expressed an unwillingness to resolve the case without "an agreement as to restitution," when the victim had "ask[ed] for it."

In response, Mr. Bostic's counsel complained that Mr. Antoine "was supposed to be here today like everybody else." After the stand-in prosecutor informed the court of Mr. Antoine's "on call" status based on the assigned prosecutor's unavailability, defense counsel again asked the judge to intervene in the plea negotiations "to get this thing over with and put it behind us."

The following exchange then occurred:

THE COURT: All right. This is what I'll do. I will actually go—I will give [Mr. Bostic] probation before judgment. Okay.

[DEFENSE COUNSEL]: Oh, okay.

THE COURT: All right. I'll give him probation before judgment. But I'm not—you know, and if he wants and I'll postpone it for a hearing on restitution. That's the best you're going to get.

[DEFENSE COUNSEL]: Six. You'll post—we'll do it. We're going to take that probation before judgment.

6

THE COURT: Sure. I don't—

[DEFENSE COUNSEL]: We will take that any day.

The stand-in prosecutor then summarized the status of the "offers": "The State's offer was 18 months suspended, one year of supervised probation. The Court's offer is [ ] probation before judgment, one year supervised, no contact with the victim."

Mr. Bostic accepted the court's offer and pleaded guilty to a charge of second-degree assault. After the prosecutor read the factual statement recited above, and the court concluded that there was a factual basis for the plea, the court promised "to strike the guilty finding, post probation before judgment," with "one year supervised probation." Mr. Bostic also agreed to pay restitution in an amount to be determined by the court at a later hearing, in exchange for which the court would "make [the probation] unsupervised."

### *The November 1, 2018 Motions Hearing and November 14, 2018 Restitution Hearing*

On November 1, 2018, Mr. Bostic, his attorney, and the assigned prosecutor appeared before the circuit court for the scheduled restitution hearing. This time, Mr. Antoine and his attorney were also present. Immediately before the hearing, Mr. Antoine had filed two motions. In the first, he asked that the court "[s]et aside the plea and disposition of October 15, 2018 on account of the violations of victim's rights." In the second, Mr. Antoine sought restitution. The court focused the hearing on the first motion and postponed consideration of restitution until November 14.

At the November 1 hearing, Mr. Antoine argued that the court had violated his rights as a victim by failing to allow him "to be heard at a meaningful time" as required by

§§ 11-402 and 11-403. He also argued that the court had imposed an illegal sentence upon Mr. Bostic by "negotiat[ing] [a] binding disposition to which the State d[id] not agree." Mr. Antoine sought relief under § 11-103(e)(2) and (3). Specifically, he requested that the court repudiate the bargain negotiated with Mr. Bostic and permit Mr. Bostic to withdraw his guilty plea so that Mr. Bostic, the State, and Mr. Antoine could "start over."

The court "assume[d], for the sake of argument, that the notifications and various rights for Mr. Antoine, as the victim, were not complied with." Nevertheless, the court expressed disbelief that it "c[ould] do a new sentencing," saying, "I don't believe I have the authority to vacate this and then impose a stronger, a more stringent sentence." The court offered to allow Mr. Antoine to speak before it proceeded to the issue of restitution, but Mr. Antoine's counsel argued that presenting victim impact evidence at that stage would "ha[ve] no meaning because the Court can't do what the statute requires which is to consider it." In light of the court's decision, Mr. Antoine "agree[d] that the Court should go forward with restitution."

The court reconvened on November 14 to consider restitution. A few hours before the hearing, Mr. Antoine filed a notice of appeal to this Court. At the hearing, Mr. Antoine testified at length regarding the losses he suffered as a result of Mr. Bostic's conduct. The court heard Mr. Antoine's testimony as well as argument from counsel and then awarded Mr. Antoine the full amount of restitution sought. The court "f[ound] [Mr. Bostic] ha[d] the ability to pay" and ordered him to "pay restitution during the period of probation."

## DISCUSSION

Mr. Antoine contends that the trial court violated his rights: (1) under § 11-402(b), by denying him an opportunity to submit a victim impact statement to the court; (2) under § 11-402(d), by failing to "consider the victim impact statement in determining the appropriate sentence"; and (3) under § 11-403(b), by declining to "allow [him] . . . to address the court under oath before the imposition of sentence." Mr. Antoine also argues that the trial court violated the separation of powers and imposed an illegal sentence upon Mr. Bostic by "negotiat[ing] the plea directly with the [d]efendant . . . , which undercut the prosecution's plea offer." The State "largely agrees with [Mr.] Antoine's position."[4]

---

[4] The State, which is nominally an appellee in this case, filed a brief that "asks th[is] Court to vacate the sentencing judgment of the Circuit Court for Baltimore City." "[O]ne who seeks to attack, modify, reverse, or amend a judgment . . . is required to appeal or cross appeal from that judgment," *Paolino v. McCormick & Co.*, 314 Md. 575, 579 (1989), which the State did not do here. As this Court has recognized, parties "cannot properly cast themselves as appellees if they are supporting the position of [the] appellant." *Matta v. Bd. of Educ.*, 78 Md. App. 264, 267 n.1 (1989). Although the State is not a proper appellee, we nonetheless elect to consider the arguments in the State's brief as though it were participating in this case as an amicus in support of Mr. Antoine.

In a motion for reconsideration filed after this opinion was initially issued, the State requested that we delete the foregoing paragraph because the issue of whether the State was a proper appellee "was not raised or briefed by any of the parties." That is correct, although the State did respond to questions by the Court on that issue during oral argument. *Cf. Att'y Grievance Comm'n v. Johnson*, 409 Md. 470, 505 (2009) (addressing an issue that, "although not briefed by the parties, . . . was raised during oral argument before this Court"). Regardless, although we ordinarily would not decide an issue that was not raised and briefed by the parties, we cannot bypass a determination regarding what parties and arguments are properly before us.

The State also suggests that our determination that it is not a proper appellee may have implications for its ability to confess error in other cases. For the avoidance of doubt, we clarify that it does not. The Rules contemplate that appellants and appellees will be adverse parties with respect to the issues on appeal. Rule 8-111(a)(1) thus designates the

9

We agree with Mr. Antoine that the trial court improperly "denie[d] or fail[ed] to consider" Mr. Antoine's rights as a crime victim, § 11-103(b), and that the court's error was not beyond its (or our) power to repair. Accordingly, we will vacate Mr. Bostic's sentence and the trial court's approval of the plea agreement and remand for the circuit court to consider approving the plea agreement after it allows Mr. Antoine the opportunity to present victim impact evidence. If the court ultimately decides not to approve the plea agreement, then it will, of course, be required to give Mr. Bostic the opportunity to withdraw his guilty plea. Md. Rule 4-243(c)(4).

first party to appeal as the appellant, and the "*adverse* party" as the appellee. (emphasis added). The Rule similarly designates "the *opposing* parties to a subsequently filed appeal" as cross-appellant and cross-appellee. *Id.* (emphasis added). Nonetheless, an appellee is always permitted to concede that it cannot defend all or part of a court's ruling, and to identify what it believes to be the implications of such a concession. For a party who seeks to attack a judgment, however, "the only method of securing review by the Court of Special Appeals is by the filing of a notice of appeal within the time prescribed by Rule 8-202." Md. Rule 8-201(a).

Moreover, permitting an appellee to advocate for reversal when, as here, there is another appellee who seeks affirmance implicates principles of fairness. Unless the schedule and parties are re-aligned in advance of briefing—which the State did not request here—the true appellee would be placed at a disadvantage. For one thing, the true appellee's brief would be due on the same date as that of the nominal appellee, an adverse party, with no provision in the Rules for a response. (Here, the State's "Brief of Appellee" was actually filed more than a month *after* Mr. Bostic's appellee's brief.) By contrast, when an amicus curiae files a brief supporting the position of an appellant, Rule 8-511(f) permits the appellee to file a brief in response. Furthermore, all appellees are ordinarily expected to share time at oral argument. Here, Mr. Antoine was afforded all of the appellant's argument time, while the State used some of the appellees' time to argue in support of Mr. Antoine. Although oral argument times can be adjusted, the default rules reflect the expectations for the alignment of the parties that are established by the Rules.

**I. MR. ANTOINE HAS STANDING TO APPEAL THE VIOLATIONS OF HIS RIGHTS.**

"The State of Maryland has expressed a clear public policy throughout the last thirty-five years to provide broad rights to crime victims," *Lopez v. State*, 458 Md. 164, 175 (2018), in both Maryland's trial and appellate courts. The first statute "enacted . . . in pursuit of that public policy goal" was Maryland's victim impact evidence statute, which became law in 1982. *Id.* (citing 1982 Md. Laws, ch. 494). The statute "required a presentence investigation report to include a victim impact statement if the defendant committed certain crimes that caused injuries to a victim." *Lopez*, 458 Md. at 175. In 1986, the General Assembly "expand[ed] the ways in which victims could present evidence at sentencing proceedings" by allowing victims, their family members, or their representatives "to address the sentencing court, as long as permitted by the sentencing judge." *Id.* at 175-76 (citing 1986 Md. Laws, ch. 127).

Victims' rights gained constitutional recognition in 1994 when the electorate ratified Article 47 of the Declaration of Rights. Article 47 provides, in pertinent part:

> (a) A victim of crime shall be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process.

> (b) In a case originating by indictment or information filed in a circuit court, a victim of crime shall have the right to be informed of the rights established in this Article and, upon request and if practicable, to be notified of, to attend, and to be heard at a criminal justice proceeding, as these rights are implemented and the terms "crime", "criminal justice proceeding", and "victim" are specified by law.

To enforce Article 47, the General Assembly passed the Victims' Rights Act of 1997. *Lopez*, 458 Md. at 176 (citing 1997 Md. Laws, ch. 311). Among other things, that Act

11

provided that, at the victim's or the State's Attorney's request, the trial court "shall, if practicable, permit the victim or the victim's representative under oath or affirmation to address the judge before the imposition of sentence or other disposition." 1997 Md. Laws, ch. 311, at 2225.

But "notwithstanding th[e] supposed beneficence to victims" embodied in Article 47 and Maryland's victims' rights statutes, until recently the General Assembly "made those hard-won rights largely illusory" by declining to "afford[] victims the right to appeal if those basic rights [were] denied." *Lopez-Sanchez v. State*, 388 Md. 214, 230-31 (2005) (Wilner, J., concurring). In a series of decisions, the Court of Appeals highlighted the absence of effective appellate rights in the State's statutory scheme. As early as 1985, the Court of Appeals observed that the victim impact testimony statute had "no teeth" because it did not allow courts to invalidate a defendant's sentence if a victim's rights were denied. *Lodowski v. State*, 302 Md. 691, 747 (1985) (quoting Md. House Judiciary Comm., Mem. re H.B. 68 & 70 (1983)), *vacated on other grounds*, 475 U.S. 1078 (1986).

In 1995, the Court of Appeals relied on the legislative history discussed in *Lodowski* to hold that victims were not permitted to appeal a defendant's sentence when they "were denied their right to address the sentencing court." *Cianos v. State*, 338 Md. 406, 410 (1995). The Court reasoned that legislators had deliberately rejected previous "attempts . . . to provide victims of violent crime with an avenue of redress" because they were "worried . . . [about] the possibility of placing the defendant in jeopardy a second

time during the sentencing hearing."[5]  *Id.* at 411-12 (quoting *Lodowski*, 302 Md. at 747) (quoting Md. House Judiciary Comm., *supra*).  Therefore, the Court concluded, "[a]n appeal by a victim . . . cannot result in a reversal of the judgment and a reopening of the case."  *Cianos*, 338 Md. at 411.  Similarly, in *Hoile v. State*, the Court of Appeals held that, under the then-current version of § 11-103, a victim whose rights had been violated when a trial court reduced a defendant's sentence without the victim's input was "powerless to have that judgment reopened or vacated."  404 Md. 591, 627 (2008).

In Chapter 363 of the Acts of 2013, the General Assembly made several important changes to § 11-103, including changes aimed at superseding aspects of *Hoile* and *Cianos*. *See* Md. Gen. Assembly, Dep't of Legis. Servs., *Fiscal & Policy Note on HB 250*, at 3 (Mar. 25, 2013), http://mgaleg.maryland.gov/2013RS/fnotes/bil_0000/hb0250.pdf (last visited December 13, 2019) (noting *Hoile*'s holding "that a trial court could not vacate an altered sentence" for violation of a victim's rights).  First, whereas the statute previously had afforded appellate rights only to victims of violent crime, Chapter 363 extended those rights to all crime victims.  2013 Md. Laws, ch. 363, § 1, *codified at* Crim. Proc. § 11-103(a)(1).  Second, although the statute previously limited a victim to filing an application for leave to appeal, Chapter 363 gave victims the right to file a direct "appeal to the Court of Special Appeals from a final order that denies or fails to consider a right secured to the victim" by, among other statutes, §§ 11-402 and 11-403.  2013 Md. Laws,

---

[5] The original House bill allowing for victim impact testimony had "provided for a sentence to be invalidated absent [such] testimony."  *See Lodowski v. State*, 302 Md. 691, 747 (1985).  Due to the legislators' concerns that the Court discussed in *Lodowski*, however, the provision was dropped before the bill passed.  *See id.* at 747-48.

ch. 363, § 1, *codified at* Crim. Proc. § 11-103(b). Third, Chapter 363 authorized a court that "finds that a victim's right was not considered or was denied" to "grant the victim relief provided the remedy does not violate the constitutional right of a defendant . . . to be free from double jeopardy." 2013 Md. Laws, ch. 363, § 1, *codified at* Crim. Proc. § 11-103(e)(2). Fourth, Chapter 363 provided that "[a] court may not provide a remedy that modifies a sentence of incarceration of a defendant . . . unless the victim requests relief from a violation of the victim's right within 30 days of the alleged violation."[6] 2013 Md. Laws, ch. 363, § 1, *codified at* Crim. Proc. § 11-103(e)(3).

As a result of the 2013 amendments to § 11-103, Mr. Antoine has standing to challenge the circuit court's alleged violations of his rights, and to seek an appropriate remedy.

## II. THE CIRCUIT COURT VIOLATED MR. ANTOINE'S RIGHTS UNDER MARYLAND'S VICTIMS' RIGHTS STATUTES.

Ordinarily, we review the trial court's "decision to admit [or exclude] certain victim impact evidence during a sentencing hearing . . . for abuse of discretion." *Lopez*, 458 Md. at 180. "When the evidentiary determination also involves a question of law," however, "that legal issue is reviewed *de novo*." *Id.* Thus, "a sentencing judge will err as a matter

---

[6] The General Assembly's most recent amendment to § 11-103 also came in response to an appellate decision. In *Griffin v. Lindsey*, the trial court had denied the victim restitution and the victim had moved for reconsideration under § 11-103(e)(4). 444 Md. 278, 283 (2015). The court denied the motion for reconsideration and the victim applied for leave to appeal that denial. *Id.* at 284. The Court of Appeals held that § 11-103(b) "did not permit a crime victim to file an application for leave to appeal the denial of a [ ] § 11-103(e) motion," because § 11-103(e) was not among the statutes specifically listed in § 11-103(b). *Griffin*, 444 Md. at 292. In Chapter 541 of the Acts of 2016, the General Assembly amended § 11-103(b) to add § 11-103(e)(4) to the list.

of law when he or she admits"—or, as here, excludes—"victim impact evidence [in] violat[ion] [of] any of the victim impact statutes." *See id.* at 181. In this case, we determine that the circuit court erred as a matter of law and violated §§ 11-402(b) and (d) and 11-403(b), when it failed to afford Mr. Antoine the opportunity to submit—and therefore failed to consider—either a victim impact statement or victim impact testimony before it bound itself to give Mr. Bostic probation before judgment.

### A. The Circuit Court Had Notice that Mr. Antoine Had Invoked His Statutory Rights.

As a preliminary matter, Mr. Bostic contends that Mr. Antoine lacks standing to bring this challenge because he failed to establish that he "file[d] a completed notification request form with the prosecuting attorney" under § 11-104(e)(1)(i). Without filing such a form, Mr. Bostic intimates, the court was not required to allow Mr. Antoine to file a victim impact statement or to testify before sentencing, and Mr. Antoine may not invoke the rights provided by Maryland's victims' rights statutes. In explaining why we disagree, we begin with a brief discussion of the role of the victim notification request form.

Following the adoption of Article 47, the General Assembly charged the State Board of Victim Services with "develop[ing] a notification request form through which a victim may request to be notified under [§ 11-104 of this title]."[7]   1996 Md. Laws, ch. 641,

---

[7] Subsequent amendments placed this statute in another section of the Code and instructed the State Board to "develop . . . an MDEC system protocol" to the same effect "in consultation with the Administrative Office of the Courts." *See* § 11-914(10). Because Baltimore City remains a non-MDEC jurisdiction, the MDEC system protocol is not relevant to this case. The remainder of our discussion will therefore focus only on the victim notification request form.

15

*currently codified at* Crim. Proc. § 11-914(10). Under § 11-104(e), (f), and (g), submitting a victim notification request form to the prosecutor provides formal notice of a victim's interest in a criminal case and desire to receive certain notices, and it imposes certain obligations on a prosecutor and the court. By submitting such a form, "a victim or victim's representative complies with Article 47 of the Maryland Declaration of Rights and each provision of the Code that requires a victim or victim's representative to request notice." Crim Proc. § 11-104(e)(3). A victim who files a notification request form is thus entitled to receive "prior notice of each court proceeding in the case, of the terms of any plea agreement, and of the right of the victim or victim's representative to submit a victim impact statement to the court under § 11-402 of this title." *Id.* § 11-104(f)(1). Similarly, such a victim is entitled to be informed "[a]s soon after a proceeding as practicable" of "the terms of any plea agreement, judicial action, and proceeding that affects the interests of the victim or victim's representative." *Id.* § 11-104(f)(3). The statute requires the clerk of court to (1) include a copy of the victim notification request form "with any commitment order or probation order" that is entered and (2) if there is an appeal, provide "a copy of the form . . . to the Attorney General and the court to which the case has been appealed." *Id.* § 11-104(g).

Those provisions make filing a victim notification request form sufficient, but not necessary, to invoke many of the crime victim's statutory rights. Although filing such a form satisfies a victim's statutory obligation to inform the prosecutor and the court of his or her interest in the proceedings, and automatically entitles the victim to receive notice as specified in the statute, doing so is not mandatory. Indeed, § 11-104(f)(4) expressly

16

authorizes a prosecutor to share information about the status of a case with the victim or victim's representative regardless of whether a victim notification request form is filed.

Here, the record on appeal does not indicate whether Mr. Antoine completed or filed an official notification request form. Assuming that he did not, the record nevertheless reveals both that Mr. Antoine provided sufficient notice of his intent to invoke the statutory rights at issue here and that the court was aware of that intent. Importantly, none of the rights Mr. Antoine invokes on appeal are made contingent on completing an official victim notification request form: The rights in § 11-402(b) and (d) are not conditioned on the victim giving formal notice at all, and § 11-402(c)(2) provides that a "victim who has not filed a notification request form" is not precluded "from submitting a victim impact statement to the court." And § 11-403(b) is explicitly triggered by any of (1) the prosecutor's request, (2) the victim's request, *or* (3) the filing of the victim notification request form. Thus, Mr. Antoine's failure to submit the formal victim notification request form does not preclude him from asserting any of those rights.

Moreover, in light of the General Assembly's "public policy mandate of affording victims broad rights," *Lopez*, 458 Md. at 179, we do not think it would further the legislative purpose to treat the failure to file a notification request form as a forfeiture of a crime victim's rights. The purpose of the notification request form is to "implement . . . the rights possessed by victims" by ensuring that victims are aware of their rights and that both the State and the court are alerted when they wish to invoke them. *See Chaney v. State*, 397 Md. 460, 469 (2007).

17

The October 15, 2018 hearing transcript shows that the court, the stand-in prosecutor, and even defense counsel were all aware that Mr. Antoine wanted to be heard; that he had been placed "on call" in case his presence was needed; and that he had not appeared only because the assigned prosecutor had told him that the trial would not go forward that day. Whether Mr. Antoine conveyed his interest in the case by filing the official notification request form or through some other method, the court was on notice of his request to submit victim impact evidence. That notice triggered court's duty to "ensure that the victim [was] in fact afforded the rights provided to victims by law." § 11-103(e)(1). As a result, Mr. Antoine's alleged failure to file a notification request form, if true, is no barrier to his claims here.

**B.** **The Circuit Court Erred by Denying Mr. Antoine an Opportunity to Submit a Victim Impact Statement, by Failing to Consider Such a Statement, and by Declining to Allow Mr. Antoine to Address the Court Under Oath Before Binding Itself to Give Mr. Bostic Probation Before Judgment.**

Mr. Antoine asserts that the trial court violated his rights as a crime victim by denying him the opportunity to submit a victim impact statement before sentencing, *see* § 11-402(b), by failing to "consider the victim impact statement in determining the appropriate sentence or disposition," *see* § 11-402(d), and by declining to "allow the victim . . . to address the court under oath before the imposition of sentence or other disposition," *see* § 11-403(b). We agree.

The Court of Appeals has emphasized that "trial judges *must* give appropriate consideration to the impact of crime upon the victims." *Lopez*, 458 Md. at 176 (quoting *Cianos*, 338 Md. at 413). "An important step towards accomplishing that task is to accept

18

victim impact testimony wherever possible." *Cianos*, 338 Md. at 413. The purpose of victim impact evidence is "to provide the victim access to the sentencing process by ensuring that at least in one way the effects of the crime on the victim will be presented to and considered by the sentencing judge." *Lopez*, 458 Md. at 175 (quoting *Reid v. State*, 302 Md. 811, 817 (1985)). That purpose is not served if the trial court considers the victim's written statement and testimony only *after* it binds itself to a specific sentence under a plea agreement. *See* Elizabeth N. Jones, *The Ascending Role of Crime Victims in Plea-Bargaining and Beyond*, 117 W. Va. L. Rev. 97, 128 (2014) ("For victims' rights to have an influence on the sentencing of a defendant, it follows that a victim's statement be made before the final sentencing decision of the court.").

Nothing about the statutory scheme relating to victims' rights suggests that the right to present victim impact evidence is less important in a case that is resolved through a guilty plea than one resolved after a trial. Indeed, if that were true, then victim impact evidence would play a role in only a small minority of criminal cases.[8] "Because ours 'is for the most part a system of pleas, not a system of trials,'" *Missouri v. Frye*, 566 U.S. 134, 143-44 (2012) (quoting *Lafler v. Cooper*, 566 U.S. 156, 170 (2012)), "plea bargaining . . . is not some adjunct to the criminal justice system; it *is* the criminal justice system," *Frye*, 566 U.S. at 144 (quoting Robert E. Scott & William J. Stuntz, *Plea Bargaining as Contract*,

---

[8] According to the State Commission on Criminal Sentencing Policy, in 2018, only "4.6% of sentencing events were resolved by either a bench or jury trial (.8% and 3.8%, respectively)." Md. State Comm'n on Crim. Sentencing Pol'y, *2018 Annual Report*, at 45-46 & n.18 (2019), http://www.msccsp.org/Files/Reports/ar2018.pdf (last visited December 13, 2019).

101 Yale L. J. 1909, 1912 (1992)). And just as "the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant," *Frye*, 566 U.S. at 144, so too it is almost always the critical point for a crime victim. The statutory rights to present victim impact evidence are therefore meaningful only if they are afforded before a trial court formally binds itself to a particular disposition of a case.

Here, the trial court was aware that Mr. Antoine was "on call" and wished to be heard. And according to an affidavit Mr. Antoine submitted to the trial court in connection with his request to set aside the plea deal, he "had a victim impact statement written and was available to give it to the court had [he] been notified that the defendant intended to enter a guilty plea." Nonetheless, the trial court bound itself to give Mr. Bostic probation before judgment without allowing Mr. Antoine the opportunity to file his victim impact statement or to testify under oath. In doing so, the court violated §§ 11-402(b) and (d), and 11-403(b), as well as the requirement in § 11-103(e)(1) that "the court shall ensure that the victim is in fact afforded the rights provided to victims by law."

That, however, is not the end of our inquiry. Indeed, at the November 1 hearing, the circuit court "assume[d], for the sake of argument, that the notifications and various rights for Mr. Antoine, as the victim, were not complied with." The court nevertheless concluded that it did "not . . . have the legal ability to change the sentence" because it had already bound itself to a plea agreement giving Mr. Bostic probation before judgment. We now consider whether the circuit court was correct that it lacked power to provide a remedy to Mr. Antoine.

20

**III.** **THE CIRCUIT COURT'S VIOLATION OF MR. ANTOINE'S RIGHTS MAY BE REMEDIED WITHOUT VIOLATING MR. BOSTIC'S RIGHT TO BE FREE FROM DOUBLE JEOPARDY.**

As a remedy for the violation of his rights, Mr. Antoine asks that we "vacat[e] the [trial] court's improper judicially negotiated plea bargain and sentence, and remand[] the case for further proceedings." We conclude that an appropriate remedy entails part of what Mr. Antoine seeks. Specifically, we will (1) vacate Mr. Bostic's sentence and the circuit court's approval of the plea agreement, but not its conditional acceptance of the guilty plea, and (2) remand for further consideration of the plea agreement after affording Mr. Antoine his statutory rights. If, after that further consideration, the court determines to approve the plea agreement, then it should proceed accordingly. If, on the other hand, the court determines to reject the plea agreement, then, pursuant to Rule 4-243(c)(4), it must advise Mr. Bostic:

> (A) that the court is not bound by the plea agreement; (B) that [Mr. Bostic] may withdraw the plea; and (C) that if [Mr. Bostic] persists in the plea of guilty, conditional plea of guilty, or a plea of nolo contendere, the sentence or other disposition of the action may be less favorable than the plea agreement.

If Mr. Bostic elects not to withdraw his guilty plea, then "the court may accept the plea of guilty only pursuant to Rule 4-242(c)." *Id.* As we explain, this remedy is appropriate pursuant to § 11-103(e)(2) because it vindicates Mr. Antoine's rights and does not implicate Mr. Bostic's "constitutional right . . . to be free from double jeopardy."

We indicated above that the General Assembly's decades-long effort to afford rights for crime victims has run into several stumbling blocks. Among the legislature's

21

continuing attempts to legislate around those blocks was its 2013 enactment of § 11-103(e)(2) and (3), which provide:

> (2) If a court finds that a victim's right was not considered or was denied, the court may grant the victim relief provided the remedy does not violate the constitutional right of a defendant . . . to be free from double jeopardy.

> (3) A court may not provide a remedy that modifies a sentence of incarceration of a defendant . . . unless the victim requests relief from a violation of the victim's right within 30 days of the alleged violation.

Collectively, those provisions authorize a court, upon finding that a victim's rights have been violated, to grant relief necessary to rectify the violation, provided that the victim requests relief within 30 days of the violation and that the remedy does not violate the defendant's double jeopardy rights. When, as here, a violation has been established, we must therefore ask three questions to determine whether the court can afford the victim a remedy. First, did the victim request relief within 30 days of the violation? Second, what relief is necessary to remedy the violation? And third, would that remedy violate the defendant's double jeopardy rights?

### A. Mr. Antoine Requested Relief Within 30 Days of the Violation.

The record reflects that Mr. Antoine requested relief both from the circuit court and from this Court within 30 days of the violation, which occurred on October 15, 2018, when the circuit court approved Mr. Bostic's guilty plea and bound itself to give him probation before judgment. Mr. Antoine moved for relief from the circuit court on November 1, 2018, and he filed his notice of appeal with this Court on November 14, 2018. Section 11-103(e)(3) thus provides no impediment to relief.

22

**B.     To Provide Relief to Mr. Antoine, We Must Vacate the Circuit Court's Approval of the Plea Agreement.**

To rectify the violations of his rights, Mr. Antoine should be placed in the position he occupied before the violations occurred. Thus, an appropriate remedy must give Mr. Antoine the opportunity to submit a victim impact statement that the court "shall consider" before determining whether to bind itself to give Mr. Bostic probation before judgment. *See* Crim Proc. § 11-402(d). To understand at what point that consideration must occur, we review briefly the rules that govern a trial court's evaluation of and ultimate decision whether to approve or reject a binding plea agreement.

A trial court's acceptance of a defendant's guilty plea is governed by Rule 4-242(c), which provides in relevant part:

> The court may not accept a plea of guilty, including a conditional plea of guilty, until after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, the court determines and announces on the record that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. . . . The court may accept the plea of guilty even though the defendant does not admit guilt. Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty.

Separately, Rule 4-243 authorizes the State and a defendant to enter, and then submit for court approval, a plea agreement pursuant to which the defendant agrees to enter a plea of guilty or no contest in return for the State agreeing to (i) amend the charging document; (ii) enter a *nolle prosequi* or a judgment of acquittal as to certain charges; (iii) not charge the defendant with additional crimes; (iv) "recommend, not oppose, or make no comment to the court with respect to a particular sentence, disposition, or other judicial action"; or

23

(v) "submit a plea agreement proposing a particular sentence, disposition, or other judicial action to a judge for consideration."[9] Md. Rule 4-243(a)(1)(A)-(F).

Here, the agreement between the court and Mr. Bostic fell into the last category, which is further governed by Rule 4-243(c):

> (1) *Presentation to the Court.* If a plea agreement has been reached pursuant to subsection (a)(1)(F) of this Rule for a plea of guilty or nolo contendere which contemplates a particular sentence, disposition, or other judicial action, the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the judge directs.
>
> (2) *Not Binding on the Court.* The agreement of the State's Attorney relating to a particular sentence, disposition, or other judicial action is not binding on the court unless the judge to whom the agreement is presented approves it.
>
> (3) *Approval of Plea Agreement.* If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.
>
> (4) *Rejection of Plea Agreement.* If the plea agreement is rejected, the judge shall inform the parties of this fact and advise the defendant (A) that the court is not bound by the plea agreement; (B) that the defendant may withdraw the plea; and (C) that if the defendant persists in the plea of guilty, conditional plea of guilty, or a plea of nolo contendere, the sentence or other disposition of the action may be less favorable than the plea agreement. If the defendant persists in the plea, the court may accept the plea of guilty only pursuant to Rule 4-242(c) and the plea of nolo contendere only pursuant to Rule 4-242(e).

---

[9] The final category is sometimes called an "ABA plea agreement." *See Sharp v. State*, 446 Md. 669, 698-99 (2016) (discussing ABA Standards for Criminal Justice, *Pleas of Guilty*, Standard 14-3.3 (3d. ed.)). COMAR 14.22.01.02(B)(2) defines "American Bar Association (ABA) plea agreement" as "a plea agreement that: (a) A court has approved relating to a particular sentence, disposition, or other judicial action; and (b) Is binding on the court under Maryland Rule 4-243(c)."

(5) *Withdrawal of Plea*.  If the defendant withdraws the plea and pleads not guilty, then upon the objection of the defendant or the State made at that time, the judge to whom the agreement was presented may not preside at a subsequent court trial of the defendant on any charges involved in the rejected plea agreement.

The court's consideration of a plea agreement involves two different decisions: whether to accept or reject the plea under Rule 4-242(c), and whether to approve or reject the plea agreement under Rule 4-243(c).  *See State v. Sanders*, 331 Md. 378, 386 (1993) ("Acceptance or rejection of the plea is a different action, with different consequences than approval or rejection of a plea agreement.").  "[T]he two judicial acceptances are intertwined parts of a single unfolding totality . . . ."  *State v. Smith*, 230 Md. App. 214, 227 (2016), *aff'd*, 453 Md. 561 (2017).  The process begins with the court's "conditional acceptance" of the plea.  *Id.*  Until the court finally approves the agreement, however, that "anticipatory acceptance of the deal by the judge is not . . . an absolute or binding acceptance."  *Id.*  Before approving a plea agreement, the court "must determine not only that the plea supporting the agreement is knowingly and voluntarily made, and supported by an adequate factual basis, but also 'whether the agreement is one which punishes the defendant for his act as well as satisfies the public interest that justice be not thwarted.'"  *Banks v. State*, 56 Md. App. 38, 53 (1983) (quoting *Blinken v. State*, 291 Md. 297, 308 (1981)).

Here, the court's preliminary acceptance of Mr. Bostic's guilty plea did not implicate Mr. Antoine's right to submit victim impact evidence because that act did not bind the court to any particular sentence or disposition.  Until the court actually approved the agreement, it remained able to take into account any additional information, including

25

any victim impact evidence, as part of its determination whether to give final approval to the agreement. Indeed, Rule 4-243(c)(1) expressly contemplates that after a court accepts a guilty plea, it may "defer decision as to its approval or rejection [of the plea agreement] until after such pre-sentence proceedings and investigation as the judge directs." We hold that when a crime has produced an identifiable victim who has made known his or her desire to submit a victim impact statement and provide testimony before disposition, a trial court must defer its decision to approve or reject the plea agreement until the victim has been afforded a reasonable opportunity to exercise those rights. Accordingly, to rectify the violation of Mr. Antoine's rights, we must return this case to the stage at which the court had preliminarily accepted Mr. Bostic's guilty plea but had not yet finally approved the plea agreement.

Messrs. Bostic and Antoine each argue for a different result. Mr. Bostic takes the position that even a post-approval submission of victim impact evidence is sufficient to preserve a victim's rights. Indeed, he contends that Mr. Antoine waived his appellate claims by declining the trial court's invitation to submit a victim impact statement after the court had already bound itself to the plea agreement. Notwithstanding that the court explicitly stated, "I don't believe I have the authority to vacate this and then impose a stronger, a more stringent sentence," Mr. Bostic asserts that the court had not "flat-out refused to revise [Mr. Bostic's] sentence," and therefore insists that Mr. Antoine was required to submit his victim impact statement to preserve his claim. We disagree with Mr. Bostic's interpretation of both the record and the law.

26

First, Mr. Bostic strains credulity by claiming that the trial court "appreciat[ed] . . . its authority to correct/revise the sentence." The trial court heard extensive argument from Mr. Antoine's counsel regarding its authority under § 11-103(e), and nevertheless concluded that it lacked the authority to vacate its approval of the plea agreement. We cannot agree with Mr. Bostic's characterization that the court merely was "loath[] . . . to revise [Mr. Bostic]'s sentence." To the contrary, the court expressly denied that it had authority to change the sentence under § 11-103(e). It is difficult to imagine how the court could have been more explicit in refusing to grant Mr. Antoine relief.

Second, although Mr. Bostic is correct that the court had the authority to reverse its approval of his plea agreement,[10] the mere existence of that authority did not obligate Mr. Antoine to submit victim impact evidence to avoid waiving his rights. As we have discussed, § 11-103(e)(2) grants a court express authority to "grant the victim relief" if it finds that the "victim's right was not considered or was denied." But, for the reasons already discussed, allowing a victim to submit impact evidence *after* the court has approved a binding plea agreement is not a remedy for the violation of the right to submit such

---

[10] Mr. Bostic misidentifies the source of the court's authority to revisit its approval of the plea agreement. According to him, after giving its final approval to the plea agreement, the circuit court could have afforded Mr. Antoine relief under Rule 4-345. He is incorrect, as no provision of Rule 4-345 was applicable: Mr. Bostic's probation before judgment was not inherently illegal, and so not subject to correction under Rule 4-345(a); the court's error did not constitute fraud, mistake, or irregularity in the sentence that would be cognizable under Rule 4-345(b); there was no mistake in the announcement of the sentence that would be cognizable under Rule 4-345(c); the case was not a desertion or non-support case, and so was not subject to revision under Rule 4-345(d); and a motion for modification under Rule 4-345(e) does not permit an "increase [in] the sentence." Nonetheless, as we discuss, the court did have authority to reverse its approval under § 11-103(e)(2) of the Criminal Procedure Article.

27

evidence, and have the court consider it, *before* the court binds itself.  When a sentence is established by a binding plea agreement, the court cannot impose a sentence that either "(1) exceeds the maximum ceiling set by the plea agreement or (2) falls below the minimum floor set by the plea agreement." *Smith*, 453 Md. at 575.  As a result, unless and until it vacates its approval of the plea agreement, the court cannot change the defendant's disposition in response to anything the victim might say.  Here, where the court ruled (incorrectly) that it lacked "authority to vacate this . . . sentence," hearing testimony from Mr. Antoine could not have changed the disposition of Mr. Bostic's charges.  Mr. Antoine was not required to engage in an empty ritual to preserve his right to appeal.

Mr. Antoine, by contrast, contends that affording him an appropriate remedy requires us to unwind not only the approval of the plea agreement but also the circuit court's entire prior involvement in the plea negotiations.  This, however, would go farther than necessary to provide relief, and also might implicate double jeopardy concerns.  Regardless of whether the trial court's participation in plea bargaining was advisable,[11] it did not injure

---

[11] As Mr. Antoine and the State both note, the Court of Appeals recently reiterated its advice that "trial courts . . . refrain from directly making plea offers to defendants in criminal cases." *Sharp*, 446 Md. at 700.  "[T]here are many reasons why a trial court should not make a plea offer," including that it "may be perceived as pressuring or coercing a defendant to accept." *Id.* at 701. *But see* Nancy J. King & Ronald F. Wright, *The Invisible Revolution in Plea Bargaining: Managerial Judging and Judicial Participation in Negotiations*, 95 Tex. L. Rev. 325, 383-87 (2016) (suggesting that "the judge's participation, on balance, assists, and does not coerce, the defendant").  Rule 4-243, which governs plea bargaining, also "contemplates a limited role for the trial judge in that process." *Barnes v. State*, 70 Md. App. 694, 702 (1987).

At the same time, unlike Fed. R. Crim. P. 11(c)(1), Rule 4-243 "does not expressly prohibit judicial participation in plea bargaining," *Barnes*, 70 Md. App. at 702, and the

28

Mr. Antoine because the court did not bind itself to the resolution embodied in the plea agreement either by participating in plea bargaining negotiations or by preliminarily accepting Mr. Bostic's guilty plea.[12] Nor did either of those actions preclude the court from considering Mr. Antoine's victim impact evidence when determining whether to approve the plea agreement. Indeed, even before hearing from Mr. Antoine, the court belatedly learned at the October 15, 2018 hearing that Mr. Bostic was "almost a professional boxer"—which Mr. Antoine has emphasized to this Court and, presumably, would have highlighted in his victim impact statement—and appeared to second-guess the disposition to which it had agreed. Although the court could, at that point, have vacated

---

Court of Appeals has chosen merely to "advise" courts against the practice, not to forbid it, *Sharp*, 446 Md. at 700. Academic commentary and news reports also indicate that the degree of judicial participation that occurred here is relatively common in Maryland, at least in Baltimore City. *See, e.g.*, King & Wright, *supra*, at 346, 374-76; Justin Fenton, *In Baltimore's reception court, a behind-the-scenes look at how plea deals happen*, Balt. Sun (Nov. 3, 2017), https://www.baltimoresun.com/news/crime/bs-md-ci-baltimore-plea-bargains-peters-20171023-htmlstory.html (last visited December 13, 2019). Although Mr. Antoine and the State call upon us to conclude that the trial court's participation in negotiating the plea agreement in this case was improper, our resolution of this case does not require us to reach that issue.

[12] Mr. Antoine and the State both argue that the disposition reached as a result of the "court's offer" was inherently illegal under Rule 4-345(a) because "[a]bsent the State's consent, . . . the court was not permitted to impose a sentence as part of a guilty plea that was 'more favorable' than the sentence offered by the State." That issue is not properly before us: Mr. Antoine lacks standing to raise it, and the State did not move to correct Mr. Bostic's sentence under Rule 4-345(a). We also observe that, on this record, it is far from clear that the State did not at least implicitly consent to the plea agreement.

29

its approval of the plea agreement under § 11-103(e)(2), it mistakenly believed that it had no authority to do so.[13]

In summary, to afford a crime victim a meaningful right to submit victim impact evidence, as required by §§ 11-402(b) and (d) and 11-403(b), a court must allow the victim an opportunity to present such evidence before binding itself to a particular sentence. Here, we need not unwind the entire plea-bargaining process to achieve that. We must, however, vacate the trial court's approval of Mr. Bostic's plea agreement so that the court may consider Mr. Antoine's victim impact evidence before it decides whether final approval is warranted. If the court approves the agreement after considering Mr. Antoine's input, then it may proceed accordingly. If it rejects the agreement, however, then it must give Mr. Bostic the opportunity to "withdraw the plea," Rule 4-243(c)(4), and otherwise comply with the provisions of Rule 4-243(c)(4) and (5).

### C. Vacating the Circuit Court's Approval of Mr. Bostic's Sentence and Plea Agreement Will Not Violate Mr. Bostic's Right to Be Free from Double Jeopardy.

Section 11-103(e)(2) states that we may remedy the violation of Mr. Antoine's rights only if doing so would "not violate [Mr. Bostic's] constitutional right . . . to be free from double jeopardy." Two aspects of that limitation are particularly noteworthy. First, it is, of course, unnecessary. The statute could not authorize a remedy that would violate

---

[13] We observe that some crime victim rights are triggered earlier in the life of a case than those at issue here. Section 11-102(a), for example, provides that, "[i]f practicable, a victim or victim's representative who has filed a notification request form . . . has the right to attend any proceeding in which the right to appear has been granted to a defendant." A court's violation of such a right may not be amenable to the same remedy we apply here.

30

a defendant's constitutional right to be free from double jeopardy. Second, the limitation refers only to a defendant's "constitutional right," thereby omitting reference to Maryland's common law protection against double jeopardy.[14] The latter "is not coextensive with the Fifth Amendment Double Jeopardy Clause in every way." *Scott v. State*, 230 Md. App. 411, 436 (2016), *aff'd*, 454 Md. 146 (2017). Indeed, the common law right is, in some instances, more protective of criminal defendants than the constitutional right. *Compare State v. Taylor*, 371 Md. 617, 643-44 (2002) (holding, under Maryland common law, that jeopardy attached to two pretrial rulings on motions to dismiss), *with Serfass v. United States*, 420 U.S. 377, 389 (1975) (holding, under the federal Constitution's Double Jeopardy Clause, that jeopardy did not attach to a pretrial ruling on a motion to dismiss). By referring solely to the "constitutional" protection against double jeopardy, the General Assembly acted consistently with an intent to allow protection for victims' rights to the maximum extent compatible with the federal Constitution.[15] *Cf.* Md. Code Ann., Cts. &

---

[14] Maryland is one of only five states that does not have an analogue to the Fifth Amendment's Double Jeopardy Clause in its own constitution, *see Warren v. State*, 226 Md. App. 596, 604 & n.2 (2016), but equivalent protections are "a fundamental part of Maryland common law," *Kendall v. State*, 429 Md. 476, 484-85 (2012).

[15] Although the General Assembly cannot authorize a violation of federal constitutional rights, it is able to abrogate provisions of Maryland common law. *See, e.g.*, *Pope v. State*, 284 Md. 309, 341 (1979) ("[T]he common law is subject to change. . . . It may be changed by legislative act as Art. 5 of the Declaration of Rights expressly provides."). To be sure, the common law's "erosion is not lightly to be implied," because "the common law is [c]onstitutionally guaranteed to the inhabitants of the State" by Article 5 of the Declaration of Rights. *State v. North*, 356 Md. 308, 312 (1999). Nonetheless, that "presumption against statutory preemption of the common-law . . . is easily dissipated if [a] statute expressly overrides a common-law principle," *Hardy v. State*, 301 Md. 124, 132 (1984), if "a statute deals with an entire subject-matter," *Robinson v. State*, 353 Md. 683,

Jud. Proc. § 12-302(c)(4)(ii) (Repl. 2013; Supp. 2019) (providing that the State may appeal a trial court's ruling excluding evidence only "before jeopardy attaches to the defendant," without referring to any constitutional right).

The United States Constitution's Fifth Amendment Double Jeopardy Clause protects against three types of double jeopardy, derived from the "three related common-law pleas" of autrefois acquit, autrefois convict, and pardon. *United States v. Wilson*, 420 U.S. 332, 340 (1975). The plea of autrefois acquit "bar[red] retrial of a defendant after the court ha[d] rendered a judgment of acquittal." *Giddins v. State*, 393 Md. 1, 16 n.4 (2006). The plea of autrefois convict "provide[d] that a criminal defendant [could] not be prosecuted twice for the same offense after conviction." *Taylor*, 371 Md. at 630. The plea of pardon—the type of double jeopardy at issue here—"provide[d] that a criminal defendant . . . [could] not be punished multiple times for the same offense." *Id.*

"[T]he leading case governing th[e] aspect of double jeopardy law" protecting against multiple punishments is *United States v. DiFrancesco*, 449 U.S. 117 (1980). *See Lindsey v. State*, 218 Md. App. 512, 544 (2014) (applying *DiFrancesco*), *rev'd on other grounds sub nom. Griffin v. Lindsey*, 444 Md. 278 (2015). *DiFrancesco* concerned a provision of the Organized Crime Control Act of 1970, which allowed the government to

---

693 (1999), or if "a statute and the common law are in conflict," *id*. In those circumstances, even if "the language . . . contain[s] no specific words of repeal or abrogation," a statute will be "construed as abrogating the common law as to that subject." *Id.* at 693-94. We need not resolve whether § 11-103(e)(3) abrogates Maryland's common law protection against double jeopardy where it might conflict with statutory rights of crime victims because, as discussed below, the Court of Appeals's application of common law jeopardy in this context is consistent with the United States Supreme Court's application of the federal Double Jeopardy Clause.

appeal the sentences of convicted defendants who were designated "dangerous special offender[s]." 449 U.S. at 119-20. The defendant in *DiFrancesco*, who had been so designated, argued that the provision violated the Double Jeopardy Clause. *Id.* at 120-21. The Supreme Court held that it did not. The Court determined that double jeopardy did not apply for two principal reasons. First, "[h]istorically, the pronouncement of sentence has never carried the finality that attaches to an acquittal." *Id.* at 133. At common law, for instance, trial courts were permitted to increase a defendant's sentence so long as they did so "during the same term of court." *Id.* at 133-34; *see id.* at 134 (noting that "[t]he common law is important in the [double jeopardy] context" because the "Double Jeopardy Clause was drafted with the common-law protections in mind").

Second, the Court reasoned that "[t]he double jeopardy considerations that bar reprosecution after an acquittal . . . have no significant application to the prosecution's statutorily granted right to review a sentence." *Id.* at 136. The purpose of the Double Jeopardy Clause is to prevent the government from "repeated[ly] attempt[ing] to convict, with consequent subjection of the defendant to embarrassment, expense, anxiety, and insecurity, and the possibility that he may be found guilty even though innocent." *Id.* That purpose, the Court held, "ha[s] no significant application" to a "limited appeal" that "does not . . . involve a retrial or approximate the ordeal of a trial on the basic issue of guilt or innocence." *Id.* The Supreme Court concluded: "The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *Id.* at 137. Especially when a statute expressly provides that a sentence is subject to further review, the defendant's "legitimate

33

expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked." *Id.* In other words, because "Congress has specifically provided that the sentence is subject to appeal . . . there can be no expectation of finality in the original sentence." *Id.* at 139.

The Court of Appeals recently adopted *DiFrancesco*'s reasoning in holding that "[t]he double jeopardy prohibition does not preclude either an appeal of a sentence or resentencing."[16] *Twigg v. State*, 447 Md. 1, 21 (2016) (citing *DiFrancesco*, 449 U.S. at 132). We likewise hold that vacating Mr. Bostic's sentence and the trial court's approval of his plea agreement "does not offend double jeopardy principles." *See Twigg*, 447 Md. at 21. This remedy does not disturb the guilty plea itself, only the sentence and the agreement that would bind the court to impose that sentence. The only way Mr. Bostic's guilty plea would be undone is if he elects to withdraw it (which he may do if the circuit court, after hearing from Mr. Antoine, declines to approve the plea agreement).

Notably, as in *DiFrancesco*, Mr. Bostic cannot properly complain that this result upsets his legitimate expectations. Mr. Bostic "is charged with knowledge of the statute and its appeal provisions," and so "[h]is legitimate expectations are not defeated if his sentence is increased on appeal." *Id.* at 136-37. "[T]he Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase." *Id.* at 137. Here, Mr. Bostic is charged with knowledge of the provisions of §§ 11-402 and

---

[16] Of course, as discussed in *Twigg*, any increase in sentence imposed on remand must comply with § 12-702(b) of the Courts Article. *See Twigg v. State*, 447 Md. 1, 23-24 (2016).

11-403, and of Mr. Antoine's right to seek a remedy—including on appeal—for the violation of those rights.[17] He also is charged with knowledge of the provisions of Rule 4-243(c) that allow the circuit court to decline to approve a plea agreement submitted for its consideration. Thus, vacating Mr. Bostic's sentence and plea agreement to remedy the violation of Mr. Antoine's rights does "not violate [Mr. Bostic's] constitutional right . . . to be free from double jeopardy." *See* Crim. Proc. § 11-103(e)(2).

## CONCLUSION

By approving Mr. Bostic's plea agreement before allowing Mr. Antoine the opportunity to present victim impact evidence, the circuit court violated Mr. Antoine's rights under §§ 11-402(b) and (d), and 11-403(b) of the Criminal Procedure Article. Pursuant to § 11-103(b) and (e) of that Article, we have the power and obligation to remedy that injury. Therefore, we vacate Mr. Bostic's sentence and plea agreement and remand for the circuit court to reconsider the plea agreement after giving Mr. Antoine the opportunity to present victim impact evidence.

**SENTENCE AND APPROVAL OF PLEA AGREEMENT VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID 50% BY THE APPELLEE AND 50% BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

---

[17] In fact, after Mr. Antoine moved for relief under § 11-103(e)(2), Mr. Bostic's counsel appeared to propose that Mr. Bostic might "withdraw his plea" in order to "scrub everything that [the victim] claim[ed] went wrong" and avoid an appeal. Mr. Bostic was actually, as well as constructively, aware both of the victim's rights and of his own right to appeal.

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/2880s18cn.pdf